[Cite as *State v. Body*, 2018-Ohio-3395.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27732 |
| | : | |
| v. | : | Trial Court Case Nos. 2017-CRB-606 |
| | : | and 2017-CRB-696 |
| LAQUITA M. BODY | : | |
| | : | (Criminal Appeal from Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 24th day of August, 2018.

. . . . . . . . . . .

JOHN D. EVERETT, Atty. Reg. No. 0069911, Prosecuting Attorney, City of Kettering, 2325 Wilmington Pike, Kettering, Ohio 45420
    Attorney for Plaintiff-Appellee

MARK J. BAMBERGER, Atty. Reg. No. 0082053, P.O. Box 189, Spring Valley, Ohio 45370
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Defendant-appellant, Laquita M. Body, appeals her conviction for obstructing official business following a bench trial in the Kettering Municipal Court. In support of her appeal, Body raises arguments challenging the sufficiency and manifest weight of the evidence. Body also contends that her First Amendment rights were violated when police officers prohibited her from observing and filming a traffic stop involving her brother. For the reasons outlined below, the judgment of the trial court will be affirmed.

## Facts and Course of Proceedings

{¶ 2} On March 20, 2017, the State filed a criminal complaint against Body charging her with obstructing official business in violation of R.C. 2921.31(A), a second-degree misdemeanor. Body pled not guilty to the charge and the matter proceeded to a bench trial on July 10, 2017.

{¶ 3} At trial, the State presented four Kettering police officers who testified regarding the events that led to Body's charge for obstructing official business. Officers Jesse Anderson and Christian Cork testified that during the early morning hours of March 20, 2017, they observed a pickup truck run a red light as it was turning south onto Wilmington Pike from Dorothy Lane in Kettering. At the time of this traffic violation, Officers Anderson and Cork were driving separate cruisers and had their cruiser cameras activated. The officers' cruiser cameras captured the traffic violation in question and the footage was presented as evidence at trial. *See* State's Exhibit B.

{¶ 4} After observing the traffic violation, Officers Anderson and Cork conducted a traffic stop of the pickup truck. In doing so, the officers parked their cruisers in a line

behind the pickup truck on the curb lane of Wilmington Pike.   Officers Anderson and Cork then approached the pickup truck and obtained identification information from the driver and passenger.   During this time, Anderson detected the odor of marijuana emanating from the vehicle.

{¶ 5} Upon checking the driver and passenger's identification information, Officers Anderson and Cork discovered that the passenger, Jabree Yates, had an active warrant for his arrest.   The officers also noticed a LEADS entry warning the officers to proceed with caution due to Jabree having a history of being armed and dangerous.   In addition, Cork testified that he and Anderson were familiar with the driver, Rejuan Yates, who was suspected of trafficking narcotics.   Under these high-risk circumstances, Officers Anderson and Cork testified that they decided to request additional assistance from a third officer.

{¶ 6} Shortly after Anderson and Cork requested a third officer, Officer Robinson arrived at the scene of the traffic stop.   After Robinson's arrival, all three officers approached the pickup truck to place Jabree under arrest.   Anderson and Cork secured Jabree in handcuffs while Robinson remained at the pickup truck with Rejuan.   Anderson and Cork then walked to Anderson's cruiser where they searched Jabree's person.   Following the search of Jabree's person, Anderson began to secure Jabree inside his cruiser while Cork stood nearby as backup support.

{¶ 7} Video footage from Cork's cruiser camera indicates that Cork noticed something behind him as he was providing backup support to Anderson.   Cork is shown turning his body away from Anderson and Jabree, and saying "Hey, who is this?"   *See* State's Exhibit B (Cork Stream 1).   At that moment, Cork testified that he saw a vehicle

pulling out from a parking lot behind him. Cork also saw that Officers Carl Paulin and Eric Hall had arrived at the scene and that Hall was shining a flashlight at the vehicle. It is undisputed that Body was the driver of the vehicle in question.

{¶ 8} Officers Paulin and Hall testified that when they arrived at the scene of the traffic stop, they observed the vehicle driven by Body pull into a nearby vacant parking lot. Officers Paulin and Hall further testified that Hall exited the cruiser in order to make contact with Body. However, when Hall approached Body's vehicle and signaled her with his flashlight, Body exited the parking lot and, in doing so, drove between two police cruisers that were parked behind the stopped pickup truck.

{¶ 9} Video footage from Officer Robinson's cruiser camera shows that Body drove through a narrow space between Robinson's and Cork's parked cruisers. Thereafter, Body slowly drove by the traffic stop at close proximity and parked in a nearby handicapped parking space. Officer Anderson testified that the handicapped parking space in which Body parked was only 25 feet from where the pickup truck was stopped.

{¶ 10} After Cork observed Body's vehicle drive between his and Robinson's cruisers and park, Cork left his post with Anderson in order to make contact with Body. Cork testified that he wanted to find out who Body was, why she was there, and whether there were going to be any safety issues. Cork claimed that he checked Body's license plate and determined that she was the registered owner of the vehicle. Cork also determined from LEADS that Body was on "probationary release" and had cautions for violent tendencies and mental issues.

{¶ 11} Cork testified that after he received Body's identification information, he tried to get Body to leave the area because her presence was impeding and obstructing

him from continuing the traffic stop. Cork also testified that he asked Body to leave because of her actions, the cautions attached to her in LEADS, and because his back was turned to the traffic stop.

{¶ 12} The audio from Cork's cruiser camera indicates that Body claimed to be Rejaun's sister and that Body consistently argued with Cork regarding her right to observe the traffic stop. To that end, Body repeatedly interrupted Cork as he attempted to explain why she needed to leave the scene. Body also repeatedly asked Cork for his name, badge number, and supervisor's contact information, which Cork provided and gave Body time to write down. Body, however, continued to argue with Cork and cause delay. After Body ignored multiple orders from Cork to leave the scene, Cork placed Body under arrest for obstructing official business.

{¶ 13} Following the officers' testimony and the admission of the video evidence, the State rested its case. Body then moved for a Crim.R. 29 acquittal, which the trial court overruled. Body did not present any evidence in her defense. After taking the matter under advisement, the trial court issued a written decision finding Body guilty of obstructing official business. The trial court thereafter sentenced Body to 90 days in jail with 88 days suspended. The trial court also imposed a $500 fine with $475 suspended, court costs, and unsupervised probation for two years.

{¶ 14} Body now appeals from her conviction, raising three assignments of error for review.

**First and Third Assignments of Error**

{¶ 15} For purposes of clarity and convenience, we will review Body's First and

Third Assignments of Error together. They are as follows:

I. THE STATE MADE A CONSTITUTIONALLY ILLEGAL TRAFFIC STOP.

III. THE STATE FAILED TO PROVIDE THE DEFENDANT-APPELLANT REASONABLE TIME TO COMPLY WITH ITS ORDERS.

**{¶ 16}** Under her First Assignment of Error, Body challenges her conviction for obstructing official business by contending that the traffic stop of her brother, Rejuan, was illegal for want of reasonable articulable suspicion of criminal activity. Body claims that since her brother's traffic stop was illegal, the officers were not performing an authorized act when making the stop, and that she therefore did not hamper or impede the officers in the performance of their lawful duties. As a result, Body claims her actions on the morning in question did not constitute the offense of obstructing official business under R.C. 2921.31(A).

**{¶ 17}** Under her Second Assignment of Error, Body challenges her conviction for obstructing official business on grounds that she was not given enough time to leave the scene of the traffic stop after Officer Cork ordered her to do so. Body contends that she intended to leave the scene of the traffic stop after writing down Officer Cork's information, but that Cork arrested her before she had a chance to write everything down. In so arguing, Body again contends that her actions did not constitute the offense of obstructing official business under R.C. 2921.31(A).

**{¶ 18}** Although not explicit, we construe both of Body's arguments as challenging the sufficiency and manifest weight of the evidence presented. "When a defendant

challenges the sufficiency of the evidence, she is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law." *State v. Matthews*, 2d Dist. Montgomery No. 27718, 2018-Ohio-2424, ¶ 7, citing *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). " 'An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 19} In contrast, "[w]hen a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.* at ¶ 8, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 20} As previously noted, Body was convicted of obstructing official business in violation R.C. 2921.31(A). Pursuant to that statute: "No person, without privilege to do

so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." "R.C. 2921.31(A) thus includes five essential elements: (1) an act by the defendant, (2) done with the purpose to prevent, obstruct, or delay a public official, (3) that actually hampers or impedes a public official, (4) while the official is acting in the performance of a lawful duty, and (5) the defendant so acts without privilege." (Citations omitted.) *State v. Kates*, 169 Ohio App.3d 766, 2006-Ohio-6779, 865 N.E.2d 66, ¶ 21 (10th Dist.).

{¶ 21} "Ohio courts have consistently held that in order to violate the obstructing official business statute a defendant must engage in some affirmative or overt act or undertaking that hampers or impedes a public official in the performance of the official's lawful duties, as opposed to merely failing or refusing to cooperate or obey a police officer's request for information." *State v. Prestel*, 2d Dist. Montgomery No. 20822, 2005-Ohio-5236, ¶ 16. "A mere failure or refusal to respond to an officer's request does not constitute obstructing official business." (Citations omitted.) *State v. Crawford*, 2d Dist. Montgomery No. 25506, 2013-Ohio-4398, ¶ 17.

{¶ 22} However, "the total course of the defendant's conduct must be considered" as opposed to "viewing the acts of a defendant in isolation." (Citations omitted.) *State v. Overholt*, 9th Dist. Medina No. 2905-M, 1999 WL 635717, *2 (Aug. 18, 1999) (finding defendant's refusal to leave the scene and interference with an officer's attempts to complete an arrest, as well as profane outbursts, were sufficient to constitute the offense of obstructing official business). *See also N. Ridgeville v. Reichbaum*, 112 Ohio App.3d

79, 84, 677 N.E.2d 1245 (9th Dist.1996) (finding multiple affirmative acts taken together can be sufficient to establish a violation of R.C. 2921.31(A)). " 'Where the overall pattern of behavior is one of resistance, * * * officers may consider the totality of the events and need not point to a single act that rises to the level of obstruction.' " *Roseborough v. Trotwood*, S.D.Ohio No. 3:06-cv-129, 2007 WL 3402880, *5 (Nov. 13, 2007), quoting *Lyons v. Xenia*, 417 F.3d 565, 574 (6th Cir.2005). (Other citations omitted.)

{¶ 23} In this case, the evidence indicates that Body engaged in several affirmative actions that, when taken together, rise to the level of obstructing official business. These actions include Body's unexpected arrival at the scene of a high risk traffic stop, as well as Body's unusual behavior following her arrival. Specifically, the record indicates that Body parked in a vacant parking lot near the scene of the traffic stop and drove away as she was being approached and signaled by an officer. As she exited the parking lot, Body drove through a narrow space between two parked police cruisers that had their overhead lights activated. From there, Body slowly drove past the parked police cruisers and the stopped pickup truck while in close proximity to the vehicles. Body thereafter parked in a handicapped parking space located 25 feet from the pickup truck. When Body was ultimately approached by Officer Cork, Body constantly interrupted Cork as he attempted to explain why she needed to leave the scene of the traffic stop. Body also ignored Cork's multiple orders instructing her to leave the scene, repeatedly asked Cork questions regarding his name, badge number, and supervisor's contact information in a dilatory manner, and continually argued her right to observe police activity.

{¶ 24} From these actions, and when considering the evidence in the light most favorable to the State, a reasonable trier of fact could reasonably conclude that it was

Body's purpose to obstruct or delay Officer Cork in performing his duties with regard to the traffic stop. "A person acts purposely when it is the person's specific intention to cause a certain result[.]" R.C. 2901.22(A). "Because no one can know the mind of another, a defendant's intent is 'not discernible through objective proof.' " *State v. McCoy*, 2d Dist. Montgomery No. 22479, 2008-Ohio-5648, ¶ 14, quoting *State v. Huffman*, 131 Ohio St. 27, 1 N.E.2d 313 (1936), paragraph four of the syllabus. "Rather, a defendant's intent in acting must be 'determined from the manner in which it [the act] is done, the means used, and all other facts and circumstances in evidence.' " *Id.*, quoting *State v. Wellman*, 173 Ohio App.3d 494, 2007-Ohio-2953, 879 N.E.2d 215, ¶ 15 (1st Dist.). Here, the manner in which Body drove up to the traffic stop and Body's conduct in continually interrupting Cork, ignoring Cork's orders to leave, and repeatedly requesting the same information from Cork, sufficiently indicates that Body's actions were done with the purpose to obstruct or delay Cork in performing his duties with regards to the traffic stop.

**{¶ 25}** The evidence further indicates that Body's actions hampered or impeded Cork in performing his lawful duties. In making this determination, " 'there must be some substantial stoppage of the officer's progress.' " *State v. Ellis*, 2d Dist. Montgomery No. 24003, 2011-Ohio-2967, ¶ 59, quoting *Wellman* at ¶ 17. There is, however, "no 'finite period of time [that] constitutes a "substantial stoppage." * * * If the record demonstrates that the defendant's act hampered or impeded the officer in the performance of his duties, the evidence supports the conviction.' " *Id.*, quoting *Wellman* at ¶ 18. " '[T]his element does not require that [the defendant] cause the officers to fail in their duties, but only that, by acting, [the defendant] disrupted their performance of them.' " *State v. Terry*, 2d Dist.

Montgomery No. 26722, 2016-Ohio-3484, ¶ 22, quoting *McCoy* at ¶ 16.

**{¶ 26}** In this case, when Body first arrived at the scene, Officer Cork was assisting Officer Anderson with a high risk traffic stop. Cork was overseeing Anderson as he secured the passenger, Jabree, into Anderson's police cruiser, and Cork turned his attention away from what he was doing and directed his attention to Body's vehicle as it pulled out of the vacant parking lot by the traffic stop. The video footage shows that Cork physically turned his body away from Anderson and said: "Hey, who's this?" *See* State's Exhibit B (Cork Stream 1). Cork then walked away from Anderson, who was still securing Jabree in the cruiser, and watched Body's vehicle as it drove slowly past their cruisers at such close proximity that Body's vehicle straddled into the lane where the officers' cruisers were parked.

**{¶ 27}** Due to Body's unusual behavior, Cork had to leave his post with Anderson and approach Body's vehicle for purposes of officer safety. When Cork made contact with Body, Body repeatedly interrupted him, questioned his authority to order her to leave, and asked him for information that delayed his ability to return to help with the traffic stop. While there were other officers at the scene who were eventually able to assist Anderson, the fact remains that Body's actions obstructed Cork from continuing his duties with regard to the traffic stop.

**{¶ 28}** As noted by the trial court:

Police officers must be able to perform their duties in safety and with efficiency. Allowing an uninvolved member of the public to become part of an investigative scene is unsafe for the Officer, unsafe for the party and unsafe for the uninvolved person seeking to intervene. Such action to

intervene seriously hampers and impedes the ability of Law Enforcement

Officers to perform their lawful duties.

Decision and Entry (Aug. 16, 2017), Kettering Municipal Court Case No. 17CRB00696, Docket No. 14, p. 7. We agree.

{¶ 29} In so holding, we note that Body's disruptive actions were not "privileged" in the context of R.C. 2921.31(A). The privilege element "refers to a positive grant of authority entitling one to deliberately obstruct or interfere with a police officer performing his lawful duty." *State v. Stayton*, 126 Ohio App.3d 158, 163, 709 N.E.2d 1224 (1st Dist.1998). While this court has held that a defendant who is not suspected of any criminal conduct is privileged to refuse a police officer's request to provide information, *Prestel*, 2d Dist. Montgomery No. 20822, 2005-Ohio-5236, at ¶ 18, there is no privilege for a person to drive through the scene of an active traffic stop and to remain at the scene after being directed to move away for purposes of officer safety.

{¶ 30} Furthermore, contrary to Body's claim otherwise, Officers Anderson and Cork were acting in the performance of their lawful duties when they conducted the traffic stop involving Body's brother, Rejuan. The video evidence from Anderson's and Cork's cruiser cameras clearly show that Rejuan ran a red light when he turned left onto Wilmington Pike from Dorothy Lane. "Under [*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)], police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot, including a minor traffic violation." *Kettering v. Maston*, 2d Dist. Montgomery No. 27567, 2018-Ohio-1948, ¶ 15, citing *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7-8.

Because Rejuan committed a traffic violation, the traffic stop at issue was lawful. Accordingly, Body's claim that there was no authorized act or lawful duty from which she could have obstructed lacks merit.

{¶ 31} Also lacking merit are Body's claims that she was not given enough time to write down Cork's name, badge number, and supervisor's contact information, and that she had intended on leaving the scene of the traffic stop after writing down that information. The audio from Cork's cruiser camera indicates that Cork provided Body a sufficient amount of time to write down the requested information. Moreover, there is nothing in the record indicating that Body intended to leave the area after she wrote down the information. In fact, Body's comments to Cork throughout the encounter indicate otherwise, as Body repeatedly claimed that she had a right to be at the scene and never once told Cork that she would leave.

{¶ 32} Because the State presented legally sufficient evidence on all elements of obstructing official business under R.C. 2921.31(A), and because the evidence does not weigh heavily against Body's conviction, Body's First and Third Assignments of Error challenging the sufficiency and weight of the evidence are overruled.

### Second Assignment of Error

{¶ 33} Body's Second Assignment of Error is as follows:

THE STATE VIOLATED THE DEFENDANT-APPELLANT'S LEGAL RIGHT

TO OBSERVE AND FILM A TRAFFIC STOP.

{¶ 34} Under her Second Assignment of Error, Body claims that she had a First Amendment right to observe and film the traffic stop and that she was unlawfully

prevented from exercising that right. Because there is no evidence in the record indicating that Body attempted to film the traffic stop, we need not address the issue of filming. Rather, the only pertinent issue raised by Body is whether she had a constitutional right to observe the traffic stop.

{¶ 35} As a preliminary matter, we note that Body's constitutional claim has been waived for appeal because Body never raised the claim at the trial court level. *See State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986) (failure to raise an apparent constitutional claim at the trial court level constitutes a waiver of that argument on appeal). This court, however, has the discretion to consider Body's claim under a plain-error analysis. *In re M.D.*, 38 Ohio St.3d 149, 527 N.E.2d 286 (1988), syllabus. To demonstrate plain error, it must be shown that "but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice." *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16, citing *State v. Davis*, 127 Ohio St.3d 268, 2010-Ohio-5706, 939 N.E.2d 147, ¶ 29.

{¶ 36} Even if we were to consider the constitutional issue, given the facts before us, Body's claim that she had a First Amendment right to observe the traffic stop in question lacks merit. In *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), the United States Supreme Court held that a bystander to a traffic stop was not engaged in activity protected by the First Amendment when the bystander failed, notwithstanding several requests by an officer, to leave a congested roadside where a friend in another car was being ticketed for a traffic offense. *Id.* at 109-110. Specifically, "the Court held that Colten 'was not engaged in activity protected by the First Amendment'

because '[h]e had no constitutional right to observe the issuance of a traffic ticket or to engage the issuing officer in conversation at that time.' " *King v. Ambs*, 519 F.3d 607, 614 (6th Cir.2008), quoting *Colten* at 109. The court in *Colten* further explained that "the State has a legitimate interest in enforcing its traffic laws and its officers were entitled to enforce them free from possible interference or interruption from bystanders, even those claiming a third-party interest in the transaction." *Colten* at 109.

**{¶ 37}** Because any right that Body had to observe police activity was forfeited by her conduct that obstructed the officers' lawful actions, Body's Second Assignment of Error is also overruled.

## Conclusion

**{¶ 38}** Having overruled each assignment of error raised by Body, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.

Copies mailed to:

John D. Everett
Mark J. Bamberger
Hon. James F. Long