[Cite as *State v. Gillam*, 2019-Ohio-808.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27998 |
| | : | |
| v. | : | Trial Court Case No. 2018-CRB-524 |
| | : | |
| AUSTIN L. GILLAM | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 8th day of March, 2019.

. . . . . . . . . . .

JOHN D. EVERETT, Atty. Reg. No. 0069911, Prosecuting Attorney, City of Kettering, 2325 Wilmington Pike, Kettering, Ohio 45420
    Attorney for Plaintiff-Appellee

CANDI S. RAMBO, Atty. Reg. No. 0076627, P.O. Box 66, Springboro, Ohio 45066
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Austin Gillam appeals from his conviction for resisting arrest and obstructing official business. Gillam contends that the State did not present evidence sufficient to sustain the conviction for obstructing official business. He further contends that the conviction for resisting arrest was not supported by the weight of the evidence.

{¶ 2} We conclude that there is evidence in this record from which a reasonable trier of fact could conclude that Gillam committed the offense of obstructing official business. We further conclude that Gillam's conviction for resisting arrest was not against the weight of the evidence.

{¶ 3} Accordingly, the judgment of the trial court is affirmed.

## I.     Facts and Procedural History

{¶ 4} On March 18, 2018, Kettering Police Officer Thomas Conley was on routine patrol when he conducted a warrant check for the area encompassed by the 45429 zip code. The check showed an active warrant for Gillam at an address on East Stroop Road. Conley requested an additional unit to accompany him to that address. When Conley and Officer Jason Kramer arrived at the address, Kramer went to the back door of the residence. Conley approached the front door and knocked. He was able to observe a person inside the home walk toward the door. Conley observed the person, identified as Gillam, look out the front door window. Conley then heard the door lock and observed Gillam run toward the back of the house. Conley ran toward the back of the

home.

{¶ 5} Kramer was at the rear of the residence when he observed Gillam pull aside a blanket and begin to open a sliding glass door.   Upon seeing Kramer, Gillam attempted to shut the door, but Kramer prevented the door from closing.   Gillam then turned and ran away from Kramer at which time Kramer announced himself as an officer and ordered Gillam to stop.   Kramer entered the home and observed a bedroom door close.   As Kramer approached the bedroom, he continued to yell that that he was a police officer, that there was a warrant for Gillam's arrest, and that Gillam needed to surrender. Kramer radioed dispatch and requested backup.   He then noted two girls in an adjacent bedroom.   Kramer ordered the girls to go the living room.

{¶ 6} Conley entered the back of the residence after he heard Kramer yell from inside the home.   Other officers, including a K-9 crew, arrived at the home.   The officers gave Gillam multiple orders to surrender and also caused the K-9 to issue a series of barks.   When Gillam did not surrender, Kramer attempted to enter the room.   Because the door was locked, Kramer was required to kick the door open.   Three officers entered the bedroom but were unable to locate Gillam.   The officers then noticed a door, without a doorknob, concealed behind the open bedroom door.   They had to partially close the bedroom door in order to access the second door.   When they opened the door, they found Gillam standing inside a closet.

{¶ 7} Conley grabbed Gillam from the closet.   Gillam ended up lying face down on the bed.   While Conley held Gillam's head, Kramer and another officer attempted to secure his arms.   Gillam was able to get his arms under his body.   When the officers were unable to restrain Gillam's arms, they directed closed-hand strikes to Gillam's upper

back in an attempt to force him to release his arms from under his body. Gillam was then observed moving his hands toward his waist. At that point, a fourth officer used a taser on Gillam which allowed the officers to gain control of Gillam's arms. Gillam was placed in handcuffs and escorted out of the home, where he was examined by a medic and transported to a hospital.

**{¶ 8}** Gillam was charged with obstructing official business and resisting arrest. Following a bench trial, he was found guilty of both charges. The trial court imposed a sentence of 90 days in jail with 45 days suspended and credit for 25 days already served. The court also imposed a fine of ten dollars and ordered Gillam to pay court costs. Gillam was also placed on one year of unsupervised probation.

**{¶ 9}** Gillam appeals.

## II.     Obstructing Official Business

**{¶ 10}** Gillam's first assignment of error states:

THE EVIDENCE PROVIDED AT TRIAL WAS INSUFFICIENT FOR ANY

RATIONAL [TRIER] OF FACT TO CONCLUDE BEYOND A REASONABLE

DOUBT THAT APPELLANT HAD OBSTRUCTED OFFICIAL BUSINESS.

**{¶ 11}** Gillam contends the State did not present evidence sufficient to sustain the conviction for obstructing official business. In support, he argues that he did not commit any affirmative act with the purpose of preventing, obstructing or delaying the police. He also argues that the police were not actually impeded in the course of the arrest.

**{¶ 12}** A sufficiency-of-the-evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to

the jury or to sustain the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The proper test to apply to such an inquiry is the one set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), which states that "[a]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at paragraph two of the syllabus

{¶ 13} Gillam was convicted of obstructing official business in violation of R.C. 2921.31(A), which states that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." "A person acts purposely when it is the person's specific intention to cause a certain result[.]" R.C. 2901.22(A). "Commonly, there is no direct evidence of a defendant's state of mind so the state must rely on circumstantial evidence to satisfy this element of its case. A defendant's state of mind may be inferred from the totality of the surrounding circumstances." *State v. Rodano*, 2017-Ohio-1034, 86 N.E.3d 1032, ¶ 43 (8th Dist.), quoting *In re Horton*, 4th Dist. Adams No. 04CA794, 2005-Ohio-3502, ¶ 23.

{¶ 14} Gillam claims that he did not commit any affirmative or overt act. Instead, he contends that he merely failed to respond to the police orders to surrender.

{¶ 15} "Ohio courts have consistently held that in order to violate the obstructing official business statute a defendant must engage in some affirmative or overt act or undertaking that hampers or impedes a public official in the performance of the official's duties * * *." *State v. Harrell*, 2d Dist. Montgomery No. 21736, 2007-Ohio-4550, ¶ 12, quoting *State v. Prestel*, 2d Dist. Montgomery No. 20822, 2005-Ohio-5236, ¶ 16. "For example, refusing to answer the door when police knock and identify themselves and refusing to obey an officer's request for information [do] not constitute obstructing official business." *Prestel* at ¶ 16. However, this court has also held that merely "[w]alking away from a police investigation and failing to heed a police officer's orders to stop can be sufficient to find a person guilty of obstructing official business." *State v. Terry*, 2d Dist. Montgomery No. 26722, 2016-Ohio-3484, ¶ 23. Likewise, hiding from the police in response to an order to surrender is sufficient to constitute the offense of obstructing official business. *State v. Thomas*, 2d Dist. Montgomery No. 26907, 2017-Ohio-5501, ¶ 31-32. "The proper focus in a prosecution for obstructing official business is on the defendant's conduct, verbal or physical, and its effect on the public official's ability to perform the official's lawful duties." (Citations omitted.) *State v. Wellman*, 173 Ohio App.3d 494, 2007-Ohio-2953, 879 N.E.2d 215, ¶ 12 (1st Dist.).

{¶ 16} While Gillam's initial refusal to open the front door amounted to no more than a failure or refusal to respond to an officer's request, his subsequent actions constituted affirmative acts that supported a conviction for obstructing official business. There is evidence in the record upon which the trial court could rely to find that Gillam locked the front door and attempted to flee from Officer Conley. Further, after being confronted by Officer Kramer in the rear of the residence, Gillam continued to flee. There

was credible evidence that Kramer not only identified himself as a police officer, but that he announced that there was a warrant for Gillam's arrest. Despite repeated demands to surrender, Gillam entered the bedroom, locked the door, and hid in a closet that was concealed by the open bedroom door.

{¶ 17} We conclude that this record contains sufficient evidence to support the trial court's conclusion that Gillam purposely acted to evade the police as they attempted to execute the warrant.

{¶ 18} Gillam next claims that even if his actions constituted an affirmative, overt act done with an intent to obstruct the officers, there was no evidence that the police were actually impeded. In support, he notes that Officer Kramer testified that an arrest on a warrant usually takes no longer than ten minutes, and Kramer also testified that this incident, from the time of the entry into the house until Gillam was escorted out of the house, took approximately ten minutes. Thus, Gillam contends that, since this arrest did not take any longer than any other arrest on a warrant, there was no evidence that he disrupted the police in the performance of their duty.

{¶ 19} Gillam is correct in his assertion that, in addition to demonstrating an overt act, the State must also prove that the defendant actually hampered or impeded the police in performing their lawful duties. *State v. McCoy*, 2d Dist. Montgomery No. 22479, 2008-Ohio-5648, ¶ 16, citing *State v. Kates*, 169 Ohio App.3d 766, 2006-Ohio-6779, 865 N.E.2d 66, ¶ 21 (10th Dist.) and *State v. Cooper*, 151 Ohio App.3d 790, 2003-Ohio-1032, 786 N.E.2d 88 (2d Dist.). Before it can be concluded that an officer was hampered or impeded, "there must be some 'substantial stoppage' of the officers' progress." (Citation omitted.) *State v. Wellman*, 173 Ohio App.3d 494, 2007-Ohio-2953, at ¶ 17 (1st Dist.).

However, there is no "finite period of time [that] constitutes a 'substantial stoppage,' * * *. If the record demonstrates that the defendant's act hampered or impeded the officer in the performance of his duties, the evidence supports the conviction." (Citations omitted.) *Id.* at ¶ 18. "[T]his element does not require that [the defendant] cause the officers to fail in their duties, but only that, by acting, [the defendant] disrupted their performance of them." *State v. Terry*, 2d Dist. Montgomery No. 26722, 2016-Ohio-3484, ¶ 22, quoting *McCoy* at ¶ 16.

{¶ 20} The time factor involved in this particular case was not dispositive of the issue. Instead, we find dispositive the fact that, once Gillam fled into a bedroom, Kramer and Conley had to request backup for purposes of officer safety. Thus, instead of two officers, Gillam's actions caused the need for six officers and a K-9 unit to become involved. The officers also had to clear the two girls from the area of the bedrooms prior to entering Gillam's bedroom. The officers were required to use defensive maneuvers and tactics for the purpose of ensuring officer safety both before and after breaking open the door to the bedroom. Finally, they had to conduct a search of the bedroom before discovering the concealed closet, at which point some of the officers had to exit the room in order to enable them to access the closet. They were also placed in more danger given the bedroom's small size. Specifically, the officers testified that the limited space in the bedroom did not allow them to get out of harm's way while attempting to open the closet door. Based upon these facts, we conclude that there was competent, credible evidence in the record upon which the trial court could have determined that Gillam's actions hampered or impeded the police in effecting an arrest on the warrant.

{¶ 21} When considering the evidence in the light most favorable to the State, a

reasonable trier of fact could have reasonably found that Gillam purposely acted to impede or delay Kramer and Conley in performing their duties with regard to execution of the arrest warrant and that his actions did so impede the arrest. Accordingly, the first assignment of error is overruled.

### III. Resisting Arrest

{¶ 22} The second assignment of error asserted by Gillam provides:

THE TRIAL COURT ERRED IN NOT FINDING EXCESSIVE FORCE WAS USED IN THE ARREST OF THE APPELLANT VIOLATING HIS 4TH AMENDMENT RIGHTS.

{¶ 23} While Gillam's argument in this assignment of error is not clear, it appears that he intends to raise a weight of the evidence argument with regard to the conviction for resisting arrest. Specifically, he contends the evidence supported a finding that the police used excessive force in effecting the arrest, and thereby established an affirmative defense to the charge. In support, he claims that he "was pinned face down on a bed with his arms and hands pinned under his body, while six officers restrain[ed] him." Thus, he argues that "the trial court should of [sic] concluded that [Gillam] did not pose an immediate threat to the safety of others given that he did not make any movements to resist the officers and was not armed."

{¶ 24} In reviewing a manifest weight argument, an appellate court must review the record, weigh the evidence and any reasonable inferences allowed by the evidence, consider witness credibility, and determine whether the trier of fact, in resolving any evidentiary conflicts, "clearly lost its way and created such a miscarriage of justice that

the conviction must be reversed and a new trial ordered." *State v. Radford*, 2d Dist. Clark No. 2016-CA-80, 2017-Ohio-8189, ¶ 15. This type of analysis must be exercised with caution so that a new trial will only be granted "in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, quoting *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶ 25}** R.C. 2921.33(A) proscribes resisting arrest and provides that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." "The use of unnecessary or excessive force by the arresting officer is a[n affirmative] defense to the charge of resisting arrest." *State v. Ellis*, 2d Dist. Montgomery No. 24003, 2011-Ohio-2967, ¶ 25, quoting *Village of Blanchester v. Newland*, 12th Dist. Clinton No. CA83-07-008, 1984 WL 3426 (Sept. 17, 1984).

**{¶ 26}** In this case, Kettering Police Department Sergeant Jeffrey Perkins testified about the force used to effectuate Gillam's arrest. Perkins testified that he had been with the Kettering Police Department for 25 years, and that he was previously a military police officer for four years. He testified that he had been a "Subject Control Instructor through Ohio Peace Officer's Training Academy [for twelve years]," and a "Defensive Tactic Supervisor" for eight years. Tr. p. 159. He further testified that he had been certified as a Taser instructor. Perkins testified that he had been trained to investigate "use of force reports," and that in the past three years, the department had had approximately 150 such reports.

**{¶ 27}** Perkins testified that he responded to a radio dispatch that officers needed assistance at the scene. When he arrived, he met Conley and Kramer in the hallway. Perkins testified that they gave numerous commands for Gillam to exit the room and

surrender. He testified that, when Gillam did not respond, they caused the K-9 unit to issue a series of barks and then again announced that they had a warrant and that Gillam should come out and surrender. When they still received no response, the officers devised a plan for entry into the room. Perkins testified that he remained in the hallway while Conley and Kramer did an initial search of the room. He then heard Conley tell Gillam to come out, followed by the sounds of a "scuffle." Tr. p. 166.

{¶ 28} Perkins testified that he immediately entered and observed that Gillam was face down on the bed with his arms underneath him. Perkins testified that the officers were trying to gain control of Gillam's arms. He testified that he heard multiple officers give clear commands to Gillam instructing him to put his hands behind his back and to stop resisting. When Gillam refused to cooperate, Perkins observed the officers deliver strikes to Gillam's back. Perkins testified that the delivery of the blows to the back were the appropriate next step in the situation. He testified that the officers were not hitting soft targets, such as the groin or throat, but rather, were hitting "large motor mass" points. According to Perkins, this use of force elicited no response from Gillam and, at that point, another officer attempted to use his taser. The first taser attempt failed, but the second was successful, allowing the officers to place Gillam in handcuffs. Perkins testified that the progression of force in this case was appropriate and reasonable and that the officers did not use any force excessive to the situation. Gillam did not submit any evidence to rebut this testimony. We also note that Kramer, Conley and the officer who deployed the taser testified they observed Gillam move his hands toward his waistband, which caused them to worry that he might be reaching for a weapon.

{¶ 29} Based upon this record, we cannot conclude that the trial court lost its way

in denying Gillam's claim of excessive force and in convicting Gillam of the offense of resisting arrest. Accordingly, the second assignment of error is overruled.

## IV. Conclusion

{¶ 30} Both of Gillam's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and DONOVAN, J., concur.

Copies sent to:

John D. Everett
Candi S. Rambo
Hon. James F. Long