[Cite as *State v. Brown*, 2025-Ohio-1391.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 30209 |
| | : | |
| v. | : | Trial Court Case No. 2024CRB659 |
| | : | |
| RONNIE D. BROWN JR. | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on April 18, 2025

. . . . . . . . . . .

JACOB S. SEIDL, Attorney for Appellant

DONALD HURST, Attorney for Appellee

. . . . . . . . . . . .

HANSEMAN, J.

{¶ 1} Appellant, Ronnie D. Brown, Jr., appeals from his conviction for obstructing official business following a bench trial in the Dayton Municipal Court. In support of his appeal, Brown claims that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. For the reasons outlined below, we

disagree with Brown's claims and will affirm the judgment of the trial court.

**Facts and Course of Proceedings**

{¶ 2} On March 5, 2024, the State filed criminal complaints in the Dayton Municipal Court charging Brown with one second-degree-misdemeanor count of obstructing official business in violation of R.C. 2921.31(A), and one second-degree-misdemeanor count of resisting arrest in violation of R.C. 2921.33(A). Brown was also cited for a minor-misdemeanor violation of R.C. 4511.50, which governs when and how pedestrians may walk along roadways. Brown pled not guilty to all three charges, and the matter proceeded to a bench trial. At trial, the State presented two body camera videos that depicted Brown's interactions with Dayton police officers Anthony Gross and Tristen Bradley on the afternoon of March 4, 2024. The State also had the officers testify regarding their interactions with Brown.

{¶ 3} The testimony and video evidence established that, on the day and time in question, Ofc. Gross was driving on South Hedges Street in Dayton, Ohio, on the report of a fight that broke out between several juveniles. While driving, Ofc. Gross spotted four juveniles walking on South Hedges Street and observed that one of the juveniles was wearing a pink sweatshirt that matched the description of a sweatshirt worn by one of the juveniles involved in the reported fight. After that observation, Ofc. Gross parked his police cruiser along the curb in front of 244 South Hedges Street and detained the juveniles for questioning. Ofc. Bradley and Ofc. Steven Quigney assisted at the scene and parked their police cruisers in the same area. There is no dispute that 244 South

Hedges Street was Brown's residence and that the officers' police cruisers were blocking Brown's driveway.

{¶ 4} Ofc. Gross and Ofc. Bradley stayed at the scene with the four juvenile suspects while Ofc. Quigney went to look for the victim of the reported fight. Ofc. Gross placed the juvenile wearing the pink sweatshirt in the backseat of his police cruiser and questioned him. During that time, Ofc. Bradley conducted pat down searches on the other three juveniles and briefly asked them a few questions. After Ofc. Gross finished questioning the juvenile in the police cruiser, he rejoined Ofc. Bradley and began questioning the other three juveniles. As Ofc. Gross was questioning the three juveniles, a black pickup truck parked across the street from where the officers and juveniles were standing. Brown exited the pickup truck and approached Ofc. Gross while recording the encounter with his cellphone.

{¶ 5} As Brown approached, Ofc. Gross asked him: "Are you one of [the juvenile's] dads? Are you with them?" Brown answered: "No." Ofc. Gross thereafter said in a courteous tone: "Alright, you got to stand over on the sidewalk then if you are not a part of this. You are more than welcome to record, but you just have to stand on the sidewalk." In response, Brown immediately said: "No, actually I don't." Ofc. Gross then said: "Actually, you do." Brown then raised his voice slightly and retorted: "Actually, I don't."

{¶ 6} Ofc. Gross thereafter explained to Brown that he was "investigating a fight." Brown responded: "I don't care." Ofc. Gross then said: "You should care." Brown responded: "No, you should care. Y'all parked in front of my house." Ofc. Gross thereafter said: "Well, if you ask me to move, I can move." Brown, however, continued talking over

Ofc. Gross. When Ofc. Gross continued to explain that he was investigating a crime, Brown responded: "Nah . . . when I walked up, you gave me orders." Ofc. Gross then explained that he had thought that Brown was the father of one of the juveniles since he walked over to them. Brown, who was still agitated, told Ofc. Gross that he had made a mistake in that regard, and that he had walked up to Ofc. Gross because he wanted to know why there were officers parked in front of his house.

{¶ 7} When Brown initially refused to obey Ofc. Gross's order to stand on the sidewalk, Ofc. Bradley left his post with the juveniles and stood beside Ofc. Gross while Brown continued to engage with him. After Brown explained that he had walked up to Ofc. Gross to find out why the officers were parked in front of his house, Ofc. Bradley stepped in and attempted to de-escalate the situation. Ofc. Bradley said: "Sir, can I talk to you? I can—we can be reasonable. Let me talk—yeah—let me talk to you. We can be reasonable. We can be reasonable."

{¶ 8} Ofc. Bradley tried to direct Brown away from Ofc. Gross, but Brown continued to engage with Ofc. Gross by asking him for his name and badge number, which Ofc. Gross provided. Brown also asked for Ofc. Gross's supervisor and then proceeded to talk over Ofc. Bradley, who continually asked Brown "to be reasonable." Ofc. Bradley continued his efforts to de-escalate the situation and to get Brown out of the street and away from Ofc. Gross and the juveniles. While motioning across the street, Ofc. Bradley told Brown: "Hey, sir, let's just be reasonable. You come over here and talk to me." In response, Brown said: "No, (indiscernible) the police surrounded my house (indiscernible)." Ofc. Bradley responded: "Sir, I will explain the whole thing. Come over

here. Come over here and talk to me." Brown, however, continued to talk over Ofc. Bradley and once again said: "The police surrounded my house." Ofc. Bradley then said: "Sir, come over here and talk to me and I'll explain what's going on, okay." Brown then began to walk with Ofc. Bradley for a moment and said: "Yeah, but he [Ofc. Gross] better watch his tone." Thereafter, Brown once again said that he wanted Ofc. Gross's supervisor and yelled to Ofc. Gross: "Yeah, while you're doing your investigation, get your supervisor."

{¶ 9} Ofc. Bradley told Brown that he would get Brown the contact information he requested and once again asked Brown to "come on over here and talk to me." Brown, however, said: "But I don't need to talk. I don't want to talk. I don't have business with y'all." Brown then walked back in the direction of Ofc. Gross, who was still speaking with the three juvenile suspects at the front of his police cruiser. While approaching Ofc. Gross, Brown said: "You need to move this. Matter fact, check this out, you need to move this car. You're blocking my driveway."

{¶ 10} As soon as Brown moved back toward Ofc. Gross, Ofc. Bradley placed his hand on the side of Brown's arm and guided him to the sidewalk across the street while saying: "If you walk up on him one more time . . ." Ofc. Bradley was unable to finish his sentence because Brown angrily interrupted him and said: "Did you just put your hand on me?" Ofc. Bradley replied: "Yes. If you walk up on him one more time like that while we are investigating, you're going to go in handcuffs." In response, Brown yelled: "Can you get your supervisor?" Ofc. Bradley answered, "yes I will," and once again ordered Brown to "stand over here on the sidewalk." Brown then yelled: "No. I'm going to go to my house."

Officer Bradley replied: "Ok, then go to your house." Brown, however, said: "No. Get your supervisor." As Brown said this, he once again walked away from the sidewalk and moved toward Ofc. Gross and the three juveniles. At that point, Ofc. Bradley grabbed Brown, placed him in handcuffs with Ofc. Gross's assistance, and arrested him for obstructing official business.

{¶ 11} After presenting the video evidence and the officers' testimony, the State rested its case. Brown then raised a Crim.R. 29 motion for acquittal of the charges. The trial court denied the motion, and Brown thereafter testified in his defense. As part of his defense, Brown presented two still-shot photographs that were taken from the officers' body camera videos. The photographs showed where the officers' police cruisers had been parked in relation to Brown's driveway.

{¶ 12} After hearing the parties' closing arguments and after considering all the evidence presented at trial, the trial court found Brown not guilty of resisting arrest and violating R.C. 4511.50, but guilty of obstructing official business. The trial court thereafter sentenced Brown to 90 days in jail and 18 months of basic, supervised probation. In addition, the trial court ordered Brown to complete an anger management course and to pay a $150 fine and court costs.

{¶ 13} Brown now appeals from his conviction and raises two assignments of error for review. Because Brown's assignments of error are interrelated, we will address them together.

**First and Second Assignments of Error**

{¶ 14} Under his assignments of error, Brown contends that his conviction for obstructing official business was not supported by sufficient evidence and was against the manifest weight of the evidence. For the reasons outlined below, we disagree.

*Standards of Review*

{¶ 15} "When a defendant challenges the sufficiency of the evidence, [he] is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law." *State v. Matthews*, 2018-Ohio-2424, ¶ 7 (2d Dist.), citing *State v. Hawn*, 138 Ohio App.3d 449, 471 (2d Dist. 2000). " 'An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997), citing *Jenks* at 503.

{¶ 16} In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *State v. Wilson*, 2009-Ohio-525, ¶ 12 (2d Dist.). When evaluating whether a conviction was against the manifest weight of

the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

*Obstructing Official Business*

{¶ 17} As previously discussed, Brown is challenging the sufficiency and manifest weight of the evidence underlying his conviction for obstructing official business in violation of R.C. 2921.31(A). That statute provides: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." R.C. 2921.31(A). " 'R.C. 2921.31(A) thus includes five essential elements: (1) an act by the defendant, (2) done with the purpose to prevent, obstruct, or delay a public official, (3) that actually hampers or impedes a public official, (4) while the official is acting in the performance of a lawful duty, and (5) the defendant so acts without privilege.' " *State v. Body*, 2018-Ohio-3395, ¶ 20 (2d Dist.), quoting *State v. Kates*, 2006-Ohio-6779, ¶ 21 (10th Dist.).

{¶ 18} " 'Privilege' in the context of R.C. 2921.31 refers to a positive grant of authority entitling one to deliberately obstruct or interfere with a police officer performing his lawful duty." *State v. Stayton*, 126 Ohio App.3d 158, 163 (1st Dist. 1998); *accord Body* at ¶ 29. A person acts "with purpose" within the meaning of R.C. 2921.31 "when it is the person's specific intention to cause a certain result[.]" R.C. 2901.22(A). "The law has long recognized that intent is not discernible through objective proof." *State v. Puterbaugh*, 142 Ohio App.3d 185, 189 (4th Dist.), citing *State v. Huffman*, 131 Ohio St. 27 (1936), paragraph four of the syllabus; *accord State v. McCoy*, 2008-Ohio-5648, ¶ 14 (2d Dist.). "Rather, a defendant's intent in acting must be 'determined from the manner in which it [the act] is done, the means used, and all other facts and circumstances in evidence.' " *McCoy* at ¶ 14, quoting *State v. Wellman*, 2007-Ohio-2953, ¶ 15 (1st Dist.).

{¶ 19} "To be guilty of the offense of obstructing official business, an individual must commit an overt act done with an intent to obstruct a public official, such as a police officer, and the act must succeed in actually hampering or impeding that officer." *State v. Gibson*, 2019-Ohio-1022, ¶ 18 (2d Dist.), citing *State v. Davis*, 2017-Ohio-5613, ¶ 37 (2d Dist.). Therefore, " ' "[t]he proper focus in a prosecution for obstructing official business is on the defendant's conduct, verbal or physical, and its effect on the public official's ability to perform the official's lawful duties." ' " *Id.,* quoting *State v. Henry*, 2018-Ohio-1128, ¶ 55 (10th Dist.), quoting *Wellman* at ¶ 12. " ' "Where the overall pattern of behavior is one of resistance, . . . officers may consider the totality of the events and need not point to a single act that rises to the level of obstruction.' " *Body* at ¶ 22, quoting *Roseborough v. City of Trotwood*, 2007 WL 3402880, *5 (S.D. Ohio Nov. 13, 2007), quoting *Lyons v. City*

*of Xenia*, 417 F.3d 565, 574 (6th Cir. 2005). In other words, "[t]he totality of the defendant's conduct should be considered, as opposed to viewing each act in isolation." *State v. Easterling*, 2019-Ohio-2470, ¶ 35 (2d Dist.), citing *Body* at ¶ 22.

{¶ 20} " 'Generally, an individual can be found guilty of obstructing official business when he persists in performing a specific act [after] a police officer has told him to stop.' " *Gibson* at ¶ 19, quoting *City of Girard v. Oakman*, 2018-Ohio-1212, ¶ 52 (11th Dist.). However, in doing so, the defendant must have "actually hampered or impeded the police in performing their lawful duties." *State v. Gillam,* 2019-Ohio-808, ¶ 19 (2d Dist.), citing *McCoy* at ¶ 16. The hamper/impede element " 'does not require that [the defendant] cause the officers to fail in their duties, but only that, by acting, [the defendant] disrupted their performance of them.' " *State v. Terry*, 2016-Ohio-3484, ¶ 22 (2d Dist.), quoting *McCoy* at ¶ 16. We have explained that "[b]efore it can be concluded that an officer was hampered or impeded, 'there must be some "substantial stoppage" of the officers' progress.' " *Gillam* at ¶ 19, quoting *Wellman* at ¶ 17. There is, however, "no 'finite period of time [that] constitutes a "substantial stoppage," . . . If the record demonstrates that the defendant's act hampered or impeded the officer in the performance of his duties, the evidence supports the conviction.' " *Id.,* quoting *Wellman* at ¶ 18.

{¶ 21} In *State v. Safo*, 2022-Ohio-4746 (8th Dist.), a body camera worn by an officer who was in the process of arresting a motorist established that the appellant drove up to the scene of the arrest, parked her vehicle in the middle of the street, and approached the officer with her cellphone in hand while the officer was attempting to handcuff the motorist. *Id.* at ¶ 2 and ¶ 18. When the appellant approached the officer, the

officer ordered the appellant multiple times to stand back and move her vehicle from the middle of the street. *Id.* at ¶ 2 and ¶ 19. Instead of complying with the officer's orders, the appellant began yelling at the officer; the officer thereafter arrested the appellant for obstructing official business. *Id.* The Eighth District Court of Appeals held that there was sufficient evidence to support a conviction for obstructing official business because the evidence established that the appellant had hampered or impeded the officer from performing his duties by distracting the officer during a "chaotic and potentially dangerous situation." *Id.* at ¶ 19.

**{¶ 22}** In *Body*, 2018-Ohio-3395 (2d Dist.), this court affirmed the appellant's conviction for obstructing official business where the evidence established that the appellant drove her vehicle slowly through a narrow space between two police cruisers that were located at a traffic stop, parked nearby the traffic stop, and then refused to leave the scene when ordered to do so by one of the investigating officers. *Id.* at ¶ 1, 9-10. At trial, the State presented an audio recording from the officer's cruiser camera on which the appellant could be heard continually interrupting the officer as he attempted to explain why the appellant needed to leave the scene. *Id.* at ¶ 12. The recording also established that the appellant continually ignored the officer's multiple orders to leave the scene. Instead of leaving, the appellant repeatedly asked the officer for his name, badge number, and supervisor's contact information. *Id.* The appellant also continually told the officer that she had the right to observe police activity. *Id.*

**{¶ 23}** On appeal, this court found that, considering the evidence in a light most favorable to the State, a reasonable trier of fact could have concluded that the appellant's

actions hampered or impeded the officer from performing his lawful duties. *Id.* ¶ 25-27. Specifically, we found that, for officer safety purposes, the officer had to leave his post at the traffic stop to investigate why the appellant had arrived at the scene. *Id.* at ¶ 27. We also found that when the officer made contact with the appellant, the appellant had delayed the officer's ability to return to help with the traffic stop by repeatedly interrupting him, questioning his authority, and asking him for his name, badge number, and supervisor's contact information. *Id.* We further found that the appellant's actions were not privileged and were conducted in a manner that indicated the appellant acted with the purpose to obstruct or delay the officer in the performance of his duties. *Id.* at ¶ 24 and ¶ 29. In light of these findings, we concluded that the appellant's conviction for obstructing official business was supported by sufficient evidence and was not against the manifest weight of the evidence. *Id.* at ¶ 32.

*Sufficiency and Manifest Weight Analysis*

{¶ 24} The instant case is analogous to *Safo* and *Body*. Viewing the officers' testimony and the video evidence in a light most favorable to the State, we find that the trial court could have reasonably concluded beyond a reasonable doubt that Brown's conduct satisfied all elements of obstructing official business in violation of R.C. 2921.31(A). Specifically, the evidence established that Brown's overt acts of arguing with the officers and failing to abide by the officers' orders to stay back on the sidewalk disrupted the officers in the performance of their duties. The video evidence showed that Brown interrupted Ofc. Gross while he was questioning the juvenile suspects and that his

interruption caused both officers to turn their attention away from the juveniles in order to focus on him. The trial court could have reasonably concluded that Brown's interruption caused a substantial stoppage in the officers' duties to question and monitor the juveniles so as to satisfy the hampering/impeding element of obstructing official business.

{¶ 25} Brown nevertheless argues that the hampering/impeding element was not satisfied because the evidence established that his actions only caused a "slight interruption" and only "momentarily diverted" the officers' attention. This argument lacks merit because there is no finite period of time that constitutes a substantial stoppage of an officer's progress. *Gillam*, 2019-Ohio-808, at ¶ 19 (2d Dist.). The video evidence showed that Brown argued with the officers and failed to comply with the officers' orders for approximately 90 seconds. Despite that being a relatively brief period of time, all that mattered was that Brown's disruption hampered the officers' ability to perform their duties during that timeframe.

{¶ 26} Brown alternatively argues that he did not hamper or impede the officers' duties in a meaningful way because the evidence established that the officers' investigation of the fight was essentially finished when he arrived at the scene. Although the video evidence showed that Ofc. Gross was in the process of concluding his questioning of the juveniles when Brown approached, Ofc. Gross testified that the investigation was still active because he was detaining the juveniles until Ofc. Quigney returned and confirmed whether he had located a victim. Trial Tr., p. 17. Ofc. Gross can be heard explaining this to the juveniles on his body camera video as well. Therefore, the evidence sufficiently established that the investigation was still active when Brown arrived

at the scene. The evidence also established that neither Ofc. Gross nor Ofc. Bradley was able to carry out his duty to monitor the detained juveniles while Brown was at the scene arguing with them. Such an impediment was meaningful in terms of officer safety, as Ofc. Gross acknowledged that it created a potentially dangerous situation. Trial Tr., p. 22. Therefore, Brown's argument that his actions did not hamper or impede the officers' duties in a meaningful way lacks merit.

**{¶ 27}** Brown further argues that the State failed to present evidence establishing that he acted with the purpose to obstruct or delay the officers in the performance of their duties. However, Brown's immediate, aggressive demeanor toward the officers suggests otherwise. When approaching the officers, Brown could have simply asked the officers what was going on and abided by Ofc. Gross's initial order to stand back on the sidewalk. Nothing prevented Brown from going on the sidewalk as ordered, walking around the scene of the investigation to his residence, and then moving his truck into his driveway after the officers left. Brown, however, decided to immediately approach the officers with a defiant, argumentative attitude while recording the encounter on his cellphone. Brown also blatantly told the officers that he did not care that they were in the midst of a criminal investigation. In addition, Brown continually walked toward Ofc. Gross and the juveniles after he had been ordered to stand back multiple times.

**{¶ 28}** Brown's aforementioned actions and his statements to the officers did not suggest that he was simply acting with the purpose to find out why the officers were in front of his house or to access his driveway. Rather, Brown's actions and statements suggested that he intended to express his frustration with the officers blocking his

driveway in a problematic way that obstructed the officers in the performance of their duties. Accordingly, Brown's argument that there was insufficient evidence that he acted with the purpose to obstruct or delay the officers in the performance of their duties lacks merit.

**{¶ 29}** Lastly, Brown argues that the State's evidence failed to establish that he acted without privilege during the incident with the officers. Brown suggests that his conduct was privileged because he was lawfully on his property. This claim lacks merit because the video evidence established that Brown was not standing on his property during the incident, but rather in the middle of the street. Brown had no privilege to stand in the middle of the street to speak to the officers when there was a serviceable sidewalk available. He also had no privilege to remain in the area of a criminal investigation after the officers ordered him to stand back. *See Body*, 2018-Ohio-3395, at ¶ 29 (2d Dist.) ("there is no privilege for a person to drive through the scene of an active traffic stop and to remain at the scene after being directed to move away for purposes of officer safety").

**{¶ 30}** While Brown did have a right to access his residence, the evidence established that he could have exercised that right without hampering or impeding the officers in the performance of their duties. Again, nothing prevented Brown from walking around the area of the criminal investigation and accessing his driveway and residence by foot. And while Brown also had a right to record police activity, *see In re S.J.*, 2023-Ohio-3441, ¶ 32 (" 'the First Amendment protects the right to record the police' "), quoting *Turner v. Driver*, 848 F.3d 678, 690 (5th Cir. 2017), nothing prevented Brown from recording the officers from the sidewalk. Indeed, the video evidence established that Ofc.

Gross specifically told Brown that he was free to record from that area. Brown did not have a right to continually ignore the officers' orders to stand back from the area where they were conducting a criminal investigation. Accordingly, Brown's privilege argument lacks merit as well.

{¶ 31} For all the foregoing reasons, the trial court could have reasonably concluded beyond a reasonable doubt that the State presented sufficient evidence of obstructing official business in violation of R.C. 2921.31(A). Therefore, Brown's claim that his conviction was not supported by sufficient evidence lacks merit.

{¶ 32} Also lacking merit is Brown's claim that his conviction was against the manifest weight of the evidence. After reviewing the entire record, weighing all the evidence and reasonable inferences, and considering witness credibility, we do not find that the trial court lost its way and created a manifest miscarriage of justice by finding Brown guilty of obstructing official business. The weight of the evidence, particularly the body camera videos, strongly supported the trial court's guilty verdict. Accordingly, this case is not one that presents the kind of exceptional circumstance that warrants reversing a conviction on manifest weight grounds.

{¶ 33} Brown's first and second assignments of error are overruled.

## Conclusion

{¶ 34} Having overruled both of Brown's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

EPLEY, P.J. and HUFFMAN, J., concur.