[Cite as *State v. Woodson*, 2022-Ohio-4005.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29394 |
| | : | |
| v. | : | Trial Court Case No. 2021-CRB-3628 |
| | : | |
| QUENTIN WOODSON | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 10th day of November, 2022.

. . . . . . . . . . .

STEPHANIE L. COOK, Atty. Reg. No. 0067101 & AMY B. MUSTO, Atty. Reg. No. 0071514, Assistant Prosecuting Attorneys, City of Dayton Prosecutor's Office, Appellate Division, 335 West Third Street, Room 372, Dayton, Ohio 45402
      Attorneys for Plaintiff-Appellee

JEFFREY T. GRAMZA, Atty. Reg. No. 0053392, 101 Southmoor Circle NW, Kettering, Ohio 45429
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Defendant-Appellant Quentin Woodson appeals from his convictions of assault, a misdemeanor of the first degree, and obstructing official business, a misdemeanor of the second degree. For the reasons that follow, the trial court's judgment will be affirmed.

## I.    Facts and Procedural History

{¶ 2} In the early morning hours of October 11, 2021, officers were dispatched to 3500 Hoover Avenue in Dayton on a report of a male and a female fighting. When they arrived, they met the purported victim, S.P., who had obvious injuries to her face. Trial testimony indicated that both eyes were swollen, there was bruising under her right eye, a laceration was observed above her right eyebrow, and her lips were swollen and bloody. (*See also* State's Exhibit 1.) Officers asked where the suspect was, and S.P. pointed to the nearby barber shop and said, "over there."

{¶ 3} The officers went to the indicated area and immediately encountered a male, later identified as Woodson. One of the officers called out for Woodson and made eye contact with him, and then Woodson took off running. Officers chased Woodson eastbound across Pearlie Avenue, around the backside of a house, and then north across Hoover Avenue. The chase ended when officers were able to get close enough to deploy a Taser. Woodson was taken into custody and then to the hospital.

{¶ 4} Once Woodson was in custody, officers spoke with S.P., who was "very emotional, very distraught. * * * She still had tears in her eyes, and she still was very

shaken up." Trial Tr. at 10-11. She revealed that Woodson had caused the injuries to her face.

{¶ 5} Woodson was charged by criminal complaint with two counts of domestic violence and one count each of assault, menacing, aggravated menacing, and obstructing official business. The case progressed to a bench trial on December 13, 2021. At that proceeding, the court heard testimony from Officer Austin Palmer and Officer Joshua Wiesman, and considered body camera video, photographs of S.P.'s injuries, and the 911 call. The victim, S.P., could not be located and did not testify. Woodson testified on his own behalf.

{¶ 6} At the conclusion of the State's case-in-chief, the court dismissed the domestic violence and menacing charges, but at the trial's end, it found Woodson guilty of assault and obstructing official business. On January 25, 2022, the court sentenced him. For assault, the court imposed 180 days in jail, with 100 days suspended and jailtime credit for four days; as to the remaining 76 days, Woodson was ordered to serve 30 days in jail and 46 days on electronic home monitoring. For obstructing official business, the court imposed 90 days, with 86 days suspended and four days of jailtime credit. In addition, Woodson was placed on probation for one year.

{¶ 7} Woodson appeals and raises a single assignment of error.

## II. Manifest Weight and Sufficiency of the Evidence

{¶ 8} In his assignment of error, Woodson alleges that his convictions for both assault and obstructing official business were against the manifest weight of the evidence and based on insufficient evidence.

{¶ 9} "[S]ufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). It is essentially a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.*

{¶ 10} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Marshall*, 191 Ohio App.3d 444, 2010-Ohio-5160, 946 N.E.2d 762, ¶ 52 (2d Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The inquiry is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*

{¶ 11} When an appellate court reviews whether a conviction is against the manifest weight of the evidence, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A case should not be reversed as being against the manifest weight of the evidence except " 'in the exceptional case in which the evidence weighs *heavily* against the conviction.' " (Emphasis added.) *Id.*

{¶ 12} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. *Accord State v. Winbush*, 2017-Ohio-696, 85 N.E.3d 501, ¶ 58 (2d Dist.). As a result, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Citations omitted.) *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

Assault

{¶ 13} R.C. 2903.13(A) states that "no person shall knowingly cause or attempt to cause physical harm to another[.]" Instead of challenging one of the elements of assault, Woodson argues identity; i.e., that because S.P. did not testify – and therefore did not identify him as the perpetrator – the evidence presented at trial was insufficient to garner a guilty verdict. We disagree; while it is true that S.P. did not testify at trial and therefore could not personally identify Woodson, there was ample evidence presented that proved identity.

{¶ 14} Officer Palmer testified that when he and Officer Wiesman arrived on scene, they met with a very emotional and injured S.P., who, when asked where the suspect was, directed the officers to Woodson's location. Then, after Woodson was taken into custody following a foot-chase, Officer Palmer interviewed S.P., who explained that Woodson "open-hand slap[ped]" her three to four times and then beat her with a metal chair. In fact, the body-camera footage (State's Exhibit 1) from the officer documents a

long conversation with S.P. in which she repeatedly identified Woodson as the perpetrator and described what he did to her. Even without the body-camera footage, the officers' descriptions of what S.P. told them (which was admitted by the trial court via the "excited utterance" exception to the hearsay rule) would have been sufficient to prove identity.

{¶ 15} Woodson, while denying injuring S.P., admitted that they had been in an argument that night and that when she fled the house, he pursued her, "cussing her and cursing her." He also admitted that he dragged her out of the street. Trial Tr. at 46. When describing their altercation in the street, he testified:

> One time, she was holding my ankles and I'm dragging her out [of] the
> street, trying to get her out [of] the street and she [was] just gripping. I did. I
> smacked her hand like, "Get off of me[.]"

Trial Tr. at 46. Finally, when confronted by officers about beating up a woman, Officer Wiesman testified that Woodson retorted, "So what? I'll assault a man too." Trial Tr. at 32.

{¶ 16} Based on the evidence presented at trial, the State proved every element of assault – including identity – beyond a reasonable doubt. The guilty verdict was not against the manifest weight of the evidence, and it was supported by sufficient evidence.

Obstructing Official Business

{¶ 17} Woodson further challenges his obstructing official business conviction, arguing that the State did not prove he "knew that the police officers approaching him were actually police" and that there was "nothing to show that the officers identified themselves as police or that they told him to stop running away from them." Appellant's

brief at 7.

{¶ 18} According to R.C. 2921.31(A), "No person without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." The offense of obstructing official business, therefore, includes five essential elements: "(1) an act by the defendant, (2) done with the purpose to prevent, obstruct, or delay a public official, (3) that actually hampers or impedes a public official, (4) while the official is acting in the performance of a lawful duty, and (5) the defendant so acts without privilege." (Citations omitted.) *State v. Body*, 2018-Ohio-3395, 117 N.E.3d 1024, ¶ 20 (2d Dist.), citing *State v. Kates*, 2006-Ohio-6779, 865 N.E.2d 66, ¶ 21 (10th Dist.).

{¶ 19} To violate the statute, a defendant must engage in an affirmative or overt act that impedes a public official in the performance of his or her duties. *State v. Prestel*, 2d Dist. Montgomery No. 20822, 2005-Ohio-5236, ¶ 16. It is well-established that fleeing from law enforcement is an indication of obstruction. *See State v. Drane*, 2d Dist. Montgomery No. 28757, 2021-Ohio-730, ¶ 52 (fleeing from an officer who is lawfully attempting to detain a suspect is an affirmative act that hinders the officer's performance of official duties); *State v. Lohaus*, 1st Dist. Hamilton No. C-020444, 2003-Ohio-777, ¶ 12 ("[Defendant's] actions in fleeing across several lawns after being told to stop – and in forcing the investigating officer to physically restrain him – fell squarely within [R.C. 2921.31's] proscriptions."); *State v. Kates*, 2006-Ohio-6779, 865 N.E.2d 66, ¶ 2 (10th Dist.) ("[D]efendant's act in failing to heed Officer Phillips's orders to stop was an

affirmative act that hindered or impeded Officer Phillips in the performance of his official duties in investigating the accident and was sufficient to support the trial court's judgment of conviction for obstructing official business.").

{¶ 20} Here, the officers drove their marked Dayton Police Department cruiser to Woodson's location, and Officer Wiesman (who was dressed in his uniform) yelled out for him. Both officers told the court that Woodson turned around, looked at them, and then fled on foot. Officer Parker recounted that he repeatedly told Woodson to stop, or he would be tased, but to no avail. It was not until Officer Palmer deployed his taser, bringing Woodson to the ground, that the pursuit ended. The body-camera video played at trial (State's Exhibit 1) reinforced the officers' testimony.

{¶ 21} The testimony and accompanying video confirmed that Woodson engaged in an affirmative or overt act that impeded Officer Palmer and Officer Wiesman from completing their official duties. Nevertheless, Woodson argues now (and testified similarly at trial) that he was unaware the people chasing him were police officers, that the officers did not identify themselves, and that they did not order him to stop. This argument was rejected by the trial court, which evidently believed the officers' testimony that they were in a marked police vehicle, were wearing uniforms, and were only 50-60 feet away when the encounter began. Further, both officers testified that they made eye contact with Woodson. Officer Wiesman stated: "I observed Woodson look at us and just * * * immediately took off." Trial Tr. at 26. He further stated that he saw Woodson because the area was well lit. Officer Palmer told the court that Woodson "looked at us, and then fled. He ran." Trial Tr. at 8. Both officers testified that they made several commands for

Woodson to stop and get on the ground. Trial Tr. at 9, 19, 27, 47, 48.

**{¶ 22}** Conflicting testimony does not mean that the verdict was against the manifest weight of the evidence. "It is well-established that when conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *In re M.J.C.*, 12th Dist. Butler No. CA2014-05-124, 2015-Ohio-820, ¶ 35. "The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). In this case, the trial court, acting as the fact finder, credited the officers' testimony over Woodson's, and because it was in the best position to judge the credibility of the witnesses, we cannot say that it erred in finding him guilty of obstructing official business. Woodson's conviction was not against the manifest weight of the evidence, and it was supported by sufficient evidence.

**{¶ 23}** Woodson's convictions for assault and obstructing official business did not create such a manifest miscarriage of justice that the conviction must be overturned, and this is not the exceptional case in which the evidence weighs heavily against the convictions. The assignment of error is overruled.

### III.     Conclusion

**{¶ 24}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and LEWIS, J., concur.

Copies sent to:

Stephanie L. Cook
Amy B. Musto
Andrew D. Sexton
Jeffrey T. Gramza
Hon. Mia Wortham Spells