[Cite as *State v. Dalton*, 2025-Ohio-862.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
| Appellee | : | C.A. No. 30217 |
| v. | : | Trial Court Case No. CRB 2400485 |
| MARK DALTON | : | (Criminal Appeal from Municipal Court) |
| Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on March 14, 2025

. . . . . . . . . . .

CHRIS BECK, Attorney for Appellant

MARIA L. RABOLD, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Mark Dalton appeals from a judgment of the Miamisburg Municipal Court that convicted him of obstructing official business. For the reasons set forth below, we vacate the judgment of the trial court.

**I.      Factual and Procedural History**

{¶ 2} The following facts are gleaned from the trial transcript. On June 7, 2024, between 1:00 and 2:00 a.m., Miami Township Police Department officers were at an apartment complex known as the Austin Landing Flats assisting with a medic call. While there, the officers were informed by a resident of the complex that "there were possibly people breaking into cars." The officers issued a radio call conveying that information to dispatch and other officers. The officers provided vehicle descriptions, apparently given by the citizen informant, of a white car that was "possibly a Malibu" and a blue car of unknown make or model.

{¶ 3} At that time, Miami Township Police Sergeant Julie Fiebig was on routine patrol in the same area. As she approached the apartments, she noticed a blue car parked in the west lot of the complex. According to Fiebig, the car was "parked offset within [a] parking space" with its headlights on. Fiebig later explained that the term "offset" meant that the car was "parked kind of crooked within the space so it stood out more than the other cars that were parked correctly." Fiebig stopped her cruiser behind the car, exited, and approached the driver's side door. She observed a single male occupant in the driver's seat, subsequently identified as Dalton. Fiebig arrested Dalton because he failed to identify himself. On June 7, 2024, Dalton was charged by criminal complaint with one count of obstructing official business in violation of R.C. 2921.31.

{¶ 4} At trial, the State introduced bodycam video of the encounter between Fiebig and Dalton. At the start of the video, Fiebig exited her cruiser, which was stopped behind Dalton's vehicle. As Fiebig approached Dalton's vehicle, another officer approached the

passenger side of the vehicle.[1]   Fiebig knocked on the driver's window, and Dalton immediately rolled the window down.   Fiebig said, "HI, good evening."   Dalton replied, "What's up?"   Fiebig indicated that the officers were "out here looking for some people messing around with cars and you are sitting with your high beams on."   Dalton then stated that he had been smoking while talking on the phone.   Fiebig asked Dalton if he had a driver's license.   Dalton replied, "I'm not driving."   Fiebig stated that she understood, "but we got a call of suspicious people in vehicles and you're sitting in a car" in this location.   Dalton began to note what he deemed to be a discrepancy between Fiebig's statement that she was investigating people "messing around with cars" and her statement that she was investigating "suspicious people in cars."   Fiebig stated that she was "not gonna argue" with Dalton, and she noted that his car was registered in Cincinnati.   Dalton acknowledged the registration and stated that it was his friend's car. Fiebig again asked Dalton for a driver's license.   At that point, Dalton began to ask questions concerning the basis for the interaction.   Fiebig replied, "you are in a car in a parking lot where we got complaints.   You are gonna turn this into something you don't want it to."   Dalton then asked for a supervisor, and Fiebig indicated that she was a supervisor.   Dalton then requested a lieutenant.   Fiebig stated, "there isn't anybody else."   Dalton then stated that he was going to call the owner of the car.   At that point, Fiebig ordered him to exit the vehicle.   Dalton again asked why he was being detained, and Fiebig replied "not cooperating."   Dalton was arrested and placed in handcuffs.

{¶ 5} Following a bench trial, Dalton was found guilty of obstructing official

---

[1] The video does not support Fiebig's testimony that the vehicle was parked "offset" or "crooked" in its parking space.

business and was sentenced accordingly.

{¶ 6} Dalton appeals.

## II.     Sufficiency of the Evidence

{¶ 7} Because it is dispositive of this appeal, we begin with Dalton's fourth assignment of error, which challenges the sufficiency of the evidence to support his conviction for obstructing official business.

{¶ 8} "[S]ufficiency is a term of art meaning that legal standard which is applied to determine whether . . . the evidence is legally sufficient to support the . . . verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Marshall*, 2010-Ohio-5160, ¶ 52 (2d Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the crime's essential elements proven beyond a reasonable doubt. *Id.*

{¶ 9} Dalton was convicted of obstructing official business in violation of R.C. 2921.31(A), which states: "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within

the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."  "R.C. 2921.31(A) thus includes five essential elements: (1) an act by the defendant, (2) done with the purpose to prevent, obstruct, or delay a public official, (3) that actually hampers or impedes a public official, (4) while the official is acting in the performance of a lawful duty, and (5) the defendant so acts without privilege." *State v. Body*, 2018-Ohio-3395, ¶ 20 (2d Dist.), quoting *State v. Kates*, 2006-Ohio-6779, ¶ 21 (10th Dist.).  "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A).

**{¶ 10}** "Ohio courts have consistently held that in order to violate the obstructing official business statute a defendant must engage in some affirmative or overt act or undertaking that hampers or impedes a public official in the performance of the official's lawful duties, as opposed to merely failing or refusing to cooperate or obey a police officer's request for information."  *State v. Prestel*, 2005-Ohio-5236, ¶ 16 (2d Dist.). *Accord Bedford Hts. v. Davis*, 2024-Ohio-1281, ¶ 8-9 (8th Dist.) ("[A] defendant's mere refusal to provide his or her driver's license to an officer upon request does not constitute obstructing official business").  In other words, the statute requires an action by the defendant because the General Assembly "has not seen fit to make an omission to act a crime."  *City of Columbus v. Michel*, 55 Ohio App.2d 46, 48 (10th Dist.1978)

**{¶ 11}** The State argues that the facts in this case are similar to those in *State v.*

*Folley*, 2011-Ohio-4539 (2d Dist.). In *Folley*, the defendant was arrested for criminal trespass and placed in the back of a police cruiser because she walked toward the entrance of an apartment building after the police had ordered her to leave the property. *Id.* at ¶ 3. She then refused to provide any information when the police asked for her name and social security number. *Id.* Her conviction for obstructing official business was affirmed on appeal, because Folley had refused to provide identifying information to the police after she was arrested for criminal trespassing, thereby hampering the officers' ability to perform their official duties regarding the trespass arrest because they had to go to the apartment leasing office to get Folley's identifying information. *Id.* at ¶ 11. This case is not like *Folley* because Dalton was not under arrest when he failed to provide his identification.

{¶ 12} Here, there is no dispute that Dalton was arrested solely for failing to provide identification. He did not make "any false or incorrect statements to police which might constitute an 'act' that hampered or impeded the officers in the performance of their lawful duties or investigation[.]" *Prestel* at 17. Dalton exited the vehicle as instructed. He did not struggle with the officers, nor did he attempt to flee. He did not utter offensive words or yell at the officers. Dalton did not make any gestures or movements that would have caused the officers to fear for their safety. In short, neither his verbal nor physical conduct constituted an overt or affirmative act.

{¶ 13} We further note that a defendant who is not suspected of any criminal conduct is privileged to refuse a police officer's request to provide information. *Id.* at ¶ 18. At trial, Fiebig testified that the citizen informant stated that people were "possibly"

breaking into cars. There is nothing in the record to demonstrate that such a crime actually occurred or that the police confirmed actual criminal activity. Also, Fiebig did not claim to have reasonable suspicion or probable cause to believe that Dalton had committed a crime at the time she engaged with him. Indeed, she testified that, if Dalton had identified himself, she would have merely logged the information and ended the encounter.

{¶ 14} We note that the State argues that, because Dalton failed to provide identification, "law enforcement had to overtly take [him] to jail to identify him by Live Id. This overt act hampered and impeded the duties of law enforcement." This argument fails on its face as the statute requires an overt act by the defendant. The State's actions in arresting and transporting Dalton to jail simply did not constitute an overt or affirmative action by Dalton.

{¶ 15} Under the facts of this case, Dalton's failure to provide identification, without more, was insufficient to support a conviction for obstructing official business. When viewed in a light most favorable to the prosecution, the evidence at trial could not convince a reasonable trier of fact beyond a reasonable doubt that Dalton had committed an overt or affirmative act that unlawfully hampered or impeded the police officers. Accordingly, we sustain the fourth assignment of error.

### III.    Trial Court Error and Ineffective Assistance of Counsel

{¶ 16} Dalton's first, second, and third assignments of error challenge the trial court's denials of a motion for a continuance and a request for a jury trial and allege that

Dalton was denied the effective assistance of counsel. Given our resolution of the fourth assignment of error, these assignments of error are rendered moot and are, accordingly, overruled.

### IV. Conclusion

**{¶ 17}** Dalton's conviction is vacated.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.